## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHARLES MILO,<br>individually and on behalf of all<br>others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 10-CV-3133 (PKC) |
| - against - | ) ) | CLASS ACTION |
| BARNEY'S, INC., | ) ) ) | |
| Defendant. | ) | |

### Plaintiff's Memorandum in Support of
### Final Approval of Class Action Settlement,
### Attorney's Fees, and Representative Fees

Respectfully Submitted,

<u>Attorneys for Plaintiff</u>:
Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906

Harley J. Schnall
Law Office of Harley J. Schnall
711 West End Ave
New York NY 10025
(212) 678-6546

# Table of Contents

I.   Introduction ………….……………………………….…………………..…………….. 1

II.   Background ……………………………………………………….………..…………….. 2

III.   Factors bearing on final approval ………………………………….…………….. 4

    A.   The complexity, expense and likely duration of the litigation ……………. 5

    B.   Reaction of the Class to the settlement……………………………………….. 5

    C.   The stage of the proceedings and the amount of discovery completed ……. 6

    D.   The risk of establishing liability and damages ……………………………. 6

    E.   The risks of maintaining the class action through the trial……………… 7

    F.   The ability of Defendant to withstand a greater judgment………………… 7

    G.   The range of reasonableness of the settlement in light of
        the best possible recovery in light of all the attendant risks;
        opinions of class counsel…………………………………………………. 8

IV.   The attorney's fees and costs sought by Plaintiff are fair and reasonable ……… 9

V.   In awarding fees and costs, Courts should bear in mind
    Congress's goals in mandating fee-shifting under the TILA ………………………9

    A.   TILA fee standards …………………………………………………….. 9

    B.   The proposed fee is reasonable ………………………………………….. 10

    C.   An upward adjustment should be made …………………………………. 14

VI.   Award to representative Plaintiff …………………………………..………….. 23

VII.   Conclusion …………………………………………………………………….23

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES MILO,<br>individually and on behalf of all<br>others similarly situated,<br><br>               Plaintiff,<br><br>   - against -<br><br><br>BARNEY'S, INC.,<br><br>             Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 10-CV-3133 (PKC)

CLASS ACTION

### Plaintiff's Memorandum in Support of
### Final Approval of Class Action Settlement,
### Attorney's Fees, and Representative Fees

## I.    Introduction

Plaintiff Charles Milo submits this brief in support of Final Approval of the

Class Action Settlement, Attorney's Fees, and Representative Fees. Plaintiff seeks

an order finally approving the terms of the settlement agreement, in the form

attached to the accompanying Declaration in Support of Brian L. Bromberg as

Exhibit B. Notice has been provided to the class members in accordance with the

Court's order.[1] Of the 1,500 class members, none have requested exclusion and none

have objected.[2] And only 47 notices were returned as undeliverable with no

forwarding address.[3] After lengthy negotiation, Plaintiff obtained statutory

damages for the class of $145,065. Although this amount represents about 29% of

---

[1] *See* accompanying Declaration of Susan Tsai (the "Tsai Declaration"), dated
January 11, 2012.

[2] *Id.*

[3] *Id.*

the maximum statutory damages available for the proposed settlement class, it represents a recovery of nearly $100 for each class member. In addition, the named Plaintiff, Charles Milo, is requesting $3,500 for his individual statutory damages and participation in this litigation. This $3,500 figure represents less than the maximum individual statutory damages of $5,000 available under the Truth in Lending Act ("TILA").[4] Finally, Defendant has agreed not to oppose a petition by Plaintiff's counsel for attorney fees and costs of $51,435. Accordingly, the settlement should be approved.

## II.   Background

Milo filed lawsuit on April 13, 2010 against Defendant ("Barneys") under the caption *Milo v. Barneys New York, Inc.* (the "Action").[5] Milo alleged that Barneys violated TILA by failing to make certain disclosures in the manner required by TILA and its implementing regulations on applications made available to the general public for credit card accounts issued by Barneys. In particular, Milo asserted that credit card applications made available at Barneys warehouse sales failed to disclose the standard annual percentage rate in a clear and conspicuous manner, in that they published the standard annual percentage rate ("APR") in a type size smaller than the type size mandated by the Federal Reserve Board. This

---

[4] 15 U.S.C. § 1601, *et seq.*
[5] The caption in the Action was later changed to Milo v. Barney's, Inc.

2

Court has granted Milo leave to proceed with this settlement on behalf of a class of Barneys cardholders.

Barneys has denied the material allegations asserted in the Complaint and has denied all liability. In addition, Barneys has denied that this case is suitable for class treatment. Nonetheless, without admitting or conceding liability, and while denying that Milo's claims are appropriate for class treatment if they were being prosecuted to trial, Barneys has agreed to settle on a class basis.

In a class action under TILA, a successful class may recover statutory damages up to the lesser of $500,000 or 1% of a Defendant's net worth. Here, after lengthy arm's-length negotiations between the parties, in which Defendant represented that 1% of its net worth exceeds the $500,000 cap, the parties agreed that Barneys would establish a settlement fund of $145,065 for the 1,500 members of the class. The parties negotiated this sum for the class before they negotiated damages for Milo or attorney fees and costs for Class Counsel. Although this amount, in the aggregate, represents about 29% of the maximum statutory damages available for the proposed settlement class, it represents a recovery of nearly $100 for each class member.

Because no class members opted out, checks are to be sent to all of the 1,453 class members whose notices were not returned. That is, of the 1,500 class notices that were sent, 47 were returned as undeliverable with no forwarding address. Therefore, each of the remaining 1,453 class members will receive approximately

$99.83. Barneys will also pay the costs of class notice and distribution of the settlement funds, which will not come from the payment to the class.

In addition to the relief to the class members, the named Plaintiff, Charles Milo, will receive $3,500 for his individual statutory damages and participation in this litigation. This represents less than the maximum individual statutory damages available under TILA.

Finally, the class members were notified of the proposed settlement by the mailing of a detailed notice advising them of the settlement terms and their eligibility to participate in the settlement.[6]

Because this Court has already certified this settlement class, Plaintiff is not going to focus on the requirements for class certification under Rule 23, which have already been briefed at length. Instead, the focus in this memorandum is on the criteria for evaluating the fairness of a proposed class-action settlement.

## III.   Factors bearing on final approval

The Second Circuit has enumerated nine factors, known as the *Grinnell* factors, to guide courts in evaluating the fairness of a proposed settlement:

> (1) The complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible

---

[6] *See* Tsai Declaration.

recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.][7]

The law "favors settlement of class actions" just as in other cases.[8]  The central question raised by the proposed settlement of the class action is that the compromise is fair, reasonable, and adequate.[9]

### A.  The complexity, expense and likely duration of the litigation

This case is complex, raising novel legal questions regarding whether the Defendant's conduct violated TILA. To the undersigned's knowledge, the claims have not been previously adjudicated at all, much less to class resolution. Continued litigation would be costly and if the case is not settled, it is likely that a final adjudication would not take place for at least two more years. Accordingly, this factor favors approval of the settlement.

### B.  Reaction of the Class to the settlement

The reaction of the Class to the settlement has been overwhelmingly positive. There have not been any objections and even after 1,500 individualized notices, no class members requested exclusion.[10] No objections and no exclusion requests tip "heavily in favor of a strong presumption of fairness."[11]

---

[7] *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted).

[8] *In re: Toys R Us Antitrust Litigation*, 191 F.R.D. 347, 350 (E.D.N.Y. 2000).

[9] *Id.*, *citing Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

[10] *See* Tsai Declaration.

[11] *See In re Rite Aid Securities Litigation*, 269 F.Supp. 2d 602, 608 (E.D. Pa. 2003); *also see Aramburu*, 2009 WL 1086938 at *4 (The fact that no class members opted out or objected weighs in favor of approval).

5

### C. The stage of the proceedings and the amount of discovery completed

The parties, through counsel, engaged in informal discovery to determine the class size, net worth, and other key information needed to move for class certification and judgment or settlement.

### D. The risk of establishing liability and damages

Although Plaintiff believes liability to be strong, Defendant denies liability. If tried, Plaintiff would bear the burden of establishing that the disclosures made in Defendant's credit card applications were not made in accordance with TILA. Defendant vigorously denies any wrongdoing, has asserted numerous defenses and maintains that the disclosures that are the subject of this case comply in all respects with TILA. Plaintiff believes that the greatest risk here is the possibility of an adverse determination at trial concerning TILA liability.  Were this issue to be litigated before this Court, although Plaintiff believes liability to be strong, the decision could go either way. Therefore, the compromise reached by the parties is a reasonable compromise given the potential downside to the class members of litigating the issue further.

The greater concern, however, is one of establishing damages. Although Plaintiff considers the violation complained of – *i.e.* the size of the type used to denote the APR on the credit-card application – to be significant, proving actual damages would be difficult. On the one hand, a jury might regard the violation as highly significant, warranting maximum damages to the class. On the other hand, a jury might find that because actual damages are hard to show and the required

information was given – albeit in the wrong type size – the violation is not significant, warranting only nominal damages to the class. In short, there is no telling what damages a jury might award.

### E. The risks of maintaining the class action through the trial

During trial, the unexpected does happen and must be taken into account: class representatives sometimes move out of the jurisdiction. On two occasions, one of Plaintiff's attorneys, Brian L. Bromberg, has represented plaintiffs that died before having an opportunity to move for class certification. Although Plaintiff's attorneys believe that Mr. Milo is in good health and makes an excellent class representative who would easily pass muster in a contested class certification motion, the vagaries of litigation must be taken into account in evaluating a settlement's reasonableness.

### F. The ability of Defendant to withstand a greater judgment

Barneys is a wholly owned subsidiary of Istithmar Bentley Holding Co., which is controlled in ways unknown to Plaintiff by Istithmar World, which itself is a subsidiary of Dubai World, a multi-billion dollar investment company managed by the government of Dubai. Although the ultimate parent company of Defendant could easily withstand a greater judgment, it is unclear whether Defendant could withstand a greater judgment. After all, Barneys was acquired in bankruptcy by its present owners after an infamous case of overexpansion.[12] Thus, it would not be in

---

[12] *See* Levine, Joshua, *The Rise and Fall of the House of Barneys: A Family Tale of Chutzpah, Glory, and Greed* (William Morrow & Co; 1st ed. April 1999).

anyone's interest to delay distribution for an additional two years to litigate some of the novel legal issues.

### G. The range of reasonableness of the settlement in light of the best possible recovery in light of all the attendant risks; opinions of class counsel

This factor also weighs toward settlement. The approximately 1,453 class members will be receiving checks for approximately $100.00. Any remaining funds will be distributed as a *cy pres* award to a charitable or nonprofit organization. None of the money will revert back to Barneys. In total, Defendant has agreed to pay $145,065.  Although this represents only 29% of the maximum statutory damages available for TILA class actions, almost $100 would go to each of 1,453 class members for a violation of which they were probably not aware. More importantly, the almost $100 going to each class member represents a payment for damages that may be difficult to prove.

Defendant agreed to this settlement for economic reasons and to avoid the burdens of litigation and possible appeals without a specific admission of wrongdoing. Nevertheless, it resulted in Plaintiff and the class members achieving through settlement an excellent recovery. In addition to the recovery for the class members, counsel also negotiated for Defendant to pay class counsel fees and costs.

For these reasons, the settlement is fair and reasonable and class counsel has endorsed it.

8

**IV.   The attorney's fees and costs sought by Plaintiff are fair and reasonable**

Plaintiff seeks attorney fees and costs of $51,435. Defendant has agreed not to oppose Plaintiff's petition seeking to recover this amount. This sum was agreed upon after the parties had agreed on the settlement fund to the class (subject to reaching a final agreement). This agreed-upon sum for fees and costs does not impact the amount of money going to the class members in any way. Nevertheless, under *Amchem*,[13] the Court has an obligation to ensure that the payment to class counsel is fair and reasonable.

**V.   In awarding fees and costs, Courts should bear in mind Congress's goals in mandating fee-shifting under the TILA**

Congress enacted TILA more than four decades ago to better inform consumers of their choices when obtaining credit.[14] Congress encouraged consumers to bring TILA actions before Federal Article III judges by eliminating any "amount in controversy" requirement. Congress also fostered enforcement of TILA by enacting statutory damages and mandating that lenders pay attorney's fees.[15]

**A.  TILA fee standards**

Where, as here, an attorney fees provision is phrased in mandatory terms, "fees may be denied a successful plaintiff only in the most unusual of circumstances."[16]

---

[13] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).
[14] 15 U.S.C. § 1601(a).
[15] 15 U.S.C. § 1640(a).
[16] *De Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir. 1990) .

### B.    The proposed fee is reasonable

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,[17] the Second Circuit clarified the proper analysis for a district court to undertake in exercising its considerable discretion in awarding attorney's fees. A court is to "bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson*[18] factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee'."

As shown below, the *Johnson* factors support the reasonableness of the negotiated fee. The *Johnson* factors are:

(1)    the time and labor required;

(2)    the novelty and difficulty of the questions;

---

[17] 493 F.3d 110, 117-118 (2d Cir. N.Y. 2007).

[18] *Johnson v. Georgia Highway Exp., Inc.* 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989).

(3)   the skill requisite to perform the legal services properly;

(4)   the preclusion of other employment by the attorney due to acceptance of the case;

(5)   the customary fee in the community;

(6)   whether the fee is fixed or contingent;

(7)   time limitations imposed by the client or the circumstances;

(8)   the amount of time involved and the results obtained;

(9)   the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

There is no strict formula as to how these factors are to be applied.[19] Once a figure for attorney's fees is calculated using the *Johnson* factors, that amount becomes the "lodestar" which can then be adjusted upwards or downwards, again using the *Johnson* factors.[20] "[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."[21] If the lodestar figure is properly calculated, adjustment will be unnecessary in most cases.[22] There is a strong presumption that the lodestar figure (reasonable hours

---

[19] *Trimpter v. City of Norfolk, Va.*, 846 F. Supp. 1295, 1303 (E.D. Va. 1994).
[20] *Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S.Ct. at 1939-40 (1983).
[21] *Id.* at 434 n.9, 103 S.Ct. at 1940 n. 9.
[22] *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986).

11

multiplied by a reasonable rate) represents a reasonable fee.[23] Currently prevailing marketplace rates establish the lodestar amount.[24] "The district court may not reduce the established market rate by some factor that it believes accounts for differences between large firms and small firms. Lawyers of common expertise and experience in the same market are entitled to the same rate."[25]

District courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate. Cases suggest that in determining the relevant "market," a court may look to rates charged by those similarly situated, including looking to the rates charged by large- or medium-sized law firms, based on the widely-held premise that a client represented by a medium-sized firm pays less than a client represented by a large firm with higher overhead costs.[26] But whether or not the aforementioned premise – that the bigger the firm the higher the attorneys' hourly rates charged – is correct, and even assuming it may be that solo practitioners of equal skill, expertise and reputation, charge less than those at large- or medium-sized firms, courts should not

---

[23] *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989), quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 656 (1986).

[24] *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 (1989); *Blum*, 465 U.S. at 895; *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985) (rejecting 46 hours on pretrial memo and 42 hours on fee application); *Cohen v. West Haven Bd. of Police Com'rs*, 638 F.2d 496, 506 (2d Cir. 1980).

[25] *Bankston v. State of Illinois*, 60 F.3d 1249, 1255-56 (7th Cir. 1995); *Bailey v. District of Columbia*, 839 F. Supp. 888, 891 (D.D.C. 1993) (no distinction between solo and large firm rate); *Gary v. Kason Credit Corp.*, No. 95-CV-54 (D. Conn. Oct. 21, 1998) (rejecting "overhead" argument).

[26] *See, e.g., Chambless v Masters Mate & Masters Pension Plan*, 885 F.2d 1053, 1058-59 (2d 1989); *Algie v. RCA Global Commc'ns, Inc.*, 891 F. Supp. 875, 895 (S.D.N.Y. 1994).

automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner. Overhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate.[27] Rather, overhead merely helps account for why some attorneys charge more for their services. Indeed, it may be that in certain niche practice areas, attorneys of the highest "skill, expertise, and reputation" have decided to maintain a solo practice instead of affiliating themselves with a firm. The reasons for doing so may be numerous, including the inherent problems of higher overhead, fee-sharing, and imputed conflicts of interest. The focus of the inquiry into the reasonable hourly rate must instead be determined by reference to "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation."[28] Working as a solo practitioner may be relevant to defining the market,[29] but it would be error to use an attorney's status as a solo practitioner as an automatic deduction or shortcut for determining the reasonable hourly rate.[30]

While the Court has discretion to determine the proper fee amount, "the latitude of its discretion is narrowed by a presumption that successful [litigants]

---

[27] *Miele v. New York State Teamsters Conference Pension & Retirement Fund,* 831 F.2d 407, 409 (2d Cir. 1987); *Blum v. Stenson,* 465 U.S. 886, 895-96, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (rejecting the Solicitor General's suggestion that fees awarded to non-profit legal aid societies be based on a "cost-related standard").

[28] *Blum v. Stenson,* 465 U.S. 886, 295, n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Chambless,* 885 F.2d at 1058-59.

[29] *See Chambless,* 885 F.2d at 1059 ("smaller firms may be subject to their own prevailing market rate").

[30] *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund,* 450 F.3d 91, 98 n.6 (2d Cir. 2006).

13

should recover reasonable attorney's fees unless special circumstances render such an award unjust.  .  .  .  Furthermore, where, as here, the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar figure, is presumptively appropriate."[31] "[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified."[32]

### C.  An upward adjustment should be made

The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate.[33] Here, Plaintiff's lodestar totals $38,910 and Plaintiff's costs total $350. This case settled primarily due to Plaintiff's counsels' knowledge and expertise in the field of consumer-protection law. With the exception of the Bromberg Law Office, P.C. and the Law Office of Harley J. Schnall, no law firms are regularly prosecuting TILA cases to class certification in the federal or state courts in New York. In other words, it is rare indeed for TILA cases to proceed to class certification – whether on merits certification or as part of certification on settlement – in New York. Large firms will not take class cases under TILA because

---

[31] *DiFilippo*, 759 F.2d at 234 (discussing civil rights litigants).

[32] *United States Football League v.  National Football League*, 887 F.2d 408, 413 (2d Cir.  1989) (awarding $5,500,000 in fees on $3 recovery), cited in *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992). *See* Laura B. Bartell, *Taxation of Costs and Awards of Expenses in Federal Court*, 101 F.R.D. 553, 560-62 (1984).

[33] *E.g.*, *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989); *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); *Brinker v. Giuffrida*, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant").

of the cap on statutory damages and small firms rarely prosecute such cases effectively. Accordingly, Plaintiff requests what amounts to a modest multiplier of 1.31 for achieving extraordinary results in a relatively short time. Moreover, under the adjustment factors identified in the Fifth Circuit case of *Johnson v. Georgia Highway Express, Inc.*, the fees and costs agreed upon by the parties are fair and reasonable.[34]

### 1. The time and labor required.

The parties engaged in protracted settlement discussions and negotiations to arrive at the appropriate class recovery and to work out the settlement documents. The case settled only after extensive arm's-length settlement negotiations.

Even with experienced class counsel on both sides, this case took almost two years to settle. Plaintiff submits that the time expended prosecuting this action would have been considerably higher had different counsel represented the Class. That is, Class Counsel's experience in consumer-protection litigation undoubtedly resulted (a) in the class being certified in the first place, and (b) in expeditious resolution on a class basis.[35] Even a cursory review of the hundreds of cases filed under the Consumer Credit Protection Act – *i.e.*, under TILA, the FDCPA, the FCRA, ECOA, etc. – every year in the Southern and Eastern Districts of New York will show that of these cases, many – if not a majority – of the class certifications

---

[34] 488 F.2d 714, 717-719 (5th Cir. 1974).
[35] *See Withers v. Eveland*, 997 F. Supp. 738, 740 (E.D. Va. 1998), (finding that "there are very few attorneys who specialize in litigating Consumer Credit Protection Act cases").

were achieved by Plaintiff's counsel. This is the very definition of a rare and extraordinary circumstance for which the Courts contemplate modest multipliers.

Because Plaintiff's attorneys have small firms – for the Law Office of Harley J. Schnall, one attorney, and for the Bromberg Law Office, two attorneys – they do the bulk of the work on their own. As one district court has noted:

> . . . attorneys, like plaintiff's counsel, operating either as solo practitioners or in small firms, often lack the resources to retain a large staff of junior lawyers who could handle (certain more clerically related) tasks more economically. Denying plaintiffs compensation for these tasks would unfairly punish plaintiffs and their counsel for not staffing this case as if they had the manpower of a major law firm.[36] Therefore, the time spent by Plaintiff's counsel to successfully complete this litigation, as set forth in the attachments hereto, is reasonable and provides no reason to adjust the lodestar.

### 2. The novelty and difficulty of the questions.

Because the questions presented by this case were novel, only seasoned TILA litigators would have noticed them. And negotiating settlement of the various class issues requires a degree of specialized legal acumen regarding TILA. Thus, the novelty and difficulty of litigating any class action and especially one in such a specialized field warrants upward adjustment of the lodestar.

### 3. The skill requisite to perform the legal services properly.

Successful litigation of TILA cases – especially on a class basis – requires skill and familiarity with the issues involved. Plaintiff's counsel knows of very few

---

[36] *Bailey v. District of Columbia*, 389 F. Supp. 888, 891 (D.D.C. 1993); *see also*, *Withers v. Eveland*, 997 F. Supp. at 740, and *Morgan v. Credit Adjustment Board*, 1998 U.S. Dist. Lexis 8135 at 5.

attorneys who purport to be able to litigate plaintiffs' consumer-protection cases. Most attorneys do not recognize the legal issues involved in such cases, and requests for representation are generally turned away by members of the Bar.

Because of the skill of Plaintiff's counsel and the rarity of successfully prosecuting TILA class actions in this district, Plaintiff requests an upward adjustment of the lodestar.

### 4. The preclusion of other employment.

The time spent on this case was not, and could not be, spent at the same time on other cases. There are substantial opportunity costs in preparing the necessary documentation and briefing to represent plaintiff in a contingency or fee-shifting case in federal court. The substantial amount of time expended on Plaintiff and the class's behalf was time which would have been spent on other matters, had this case not been filed or litigated to this extent.

Therefore, it is appropriate to consider that whenever an attorney takes a case, he does so to the exclusion of accepting other work. Plaintiff's counsel expended the requisite amount of time reviewing the case and litigating it to its conclusion, to the exclusion of helping other consumers. Thus, some consumers did not receive counsels' help so that Mr. Milo and the class could.

Because the time spent on this case would have been expended on other matters, this factor provides a basis for an upward adjustment of the lodestar.

17

### 5. The customary fee for like work in the community.

Plaintiff's fee request is well within the range of similar work and is an amount recognized by other courts. Lest there be any question about the reasonableness of the hourly rates used in calculating Plaintiff's counsel's lodestar, under the "forum rule," reasonable hourly rates are those normally charged for similar work by attorneys of comparable skill and experience in the district where the court sits.[37] Plaintiff's counsel's hourly rates range from $200 to $500 for attorneys.[38] These rates are in line with those charged by firms practicing in New York City on both sides of the caption in complex class actions, and with the hourly rates that have been applied under the lodestar method in other recent cases.[39]

---

[37] *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009); *Arbor Hill*, 522 F.3d 182, 190-91 (2d Cir. 2008); *Olsen v. County of Nassau*, No. 05-cv-3623, 2010 WL 376642, at *3 (E.D.N.Y. Jan. 26, 2010).

[38] *See* Bromberg Decl. ¶¶ 33-34, Schnall Decl . ¶ 12.

[39] *See, e.g.*, *Castagna v. Madison Square Garden*, No. 09-cv-10211, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (fees were reasonable under a lodestar analysis where the hourly rates ranged from $250 to $600); *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10-cv-1853, 2011 WL 1002439, at *6 (S.D.N.Y. Mar. 16, 2011) (finding hourly rates reasonable and approving award where hourly rates were: $761 for senior partner; $616 for partner; $392 for an associate; and $312 for an associate awaiting admission); *Chin v. RCN Corp.*, No. 08-cv-7349, 2010 WL 3958794, at *5-6 (S.D.N.Y. Sept. 8, 2010) (approving a "blended" hourly rate of approximately $605); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354 at *4 (E.D.N.Y. June 24, 2010) (hourly rates from $125 to $880 were "not extraordinary for top New York law firms"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (court was "satisfied that the lodestar [was] reasonable" where the rates ranged from $125 for administrative personnel to $775 for senior lawyers); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589-90 (S.D.N.Y. 2008) (noting that hourly rates of $700-$750 for partners and $300-$550 for associates were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work); *In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510, 2007 WL

The fee is thus reasonable and the going rate for like work in this area. But the involvement of Plaintiff's counsel in this case undoubtedly is the primary factor that led to settlement on a class basis. Therefore, Plaintiff requests an upward adjustment of the lodestar. This *Johnson* factor is addressed in greater detail under factor number 8, below.

### 6. Whether the fee is fixed or contingent.

An award of attorney fees in a contingency fee matter should compensate counsel for the risk of receiving no compensation. In consumer-protection cases, the fee is very often contingent – not on the amount of damages, but on an award by the court or agreement by the opponent. In a private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery. If contingent, the fee award should compensate counsel for the risk of receiving no compensation.[40] "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, win or lose." For example, one of Plaintiff's attorneys

---

2743675, at *17 (E.D.N.Y. Sept. 18, 2007) (attorney rates from $325 to $725 were "not out of line with the rates of major law firms engaged in this type of litigation"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02- md-1484, 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (hourly rates of $650-$850 for partners and $515 for senior associate "not inordinate for top-caliber New York law firms"); *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 09-cv-962, 2006 WL 3498590 at *10 (S.D.N.Y. Dec. 4, 2006) (finding that rates ranging from $100 to $675 were reasonable).

[40] *Blum v. Stenson*, 465 U.S. 886, 903, 104 S.Ct. 1541, 1551, 79 L.Ed.2d 891 (1984).

was involved in an FDCPA case entitled *Lemire v. Wolpoff & Abramson, P.C.*[41]
There the plaintiffs settled the case after prevailing on a disputed motion to certify
the class. The settlement provided for a negotiated attorney's fee of $53,000.
Notwithstanding the successful work performed in that case, the defendant is
currently in dissolution proceedings, and collection of the settlement amount
became impracticable, necessitating the decertification of that matter.

Plaintiff's counsel was willing to provide services to Mr. Milo and the class
whether they won or lost their cases and whether or not counsel got paid for that
work. This factor justifies an upward adjustment of the lodestar.

### 7. Time limitations imposed by the client or the circumstances.

The time limits in this case were only those imposed by the applicable
statutes of limitations, the Rules, and those set by the Court. Therefore, this factor
is of no consequence.

### 8. The amount involved and the results obtained.

The results obtained for the Plaintiff and the class were significant, and they
reflect counsel's substantial efforts in preparing and litigating this matter. Plaintiff
has obtained a monetary recovery that, in the view of both parties, represents 29%
of the maximum recovery. By any calculation, this is a significant result,
warranting an upward adjustment of the lodestar.

---

[41] District of Connecticut, Docket No. 08cv249(CSH).

### 9. The experience, reputation and ability of the attorney.

Plaintiff's attorney, Brian L. Bromberg, has been practicing since 1992, is admitted in New York and California, and has established a strong reputation as a consumer-protection attorney.[42] His associate, Michael N. Litrownik, has been admitted in New York since January 2011, but has been working in the field of consumer rights law for almost a year. Mr. Litrownik's experience includes an internship with the National Consumer Law Center in Boston.[43]

Plaintiff's attorney, Harley J. Schnall, has been practicing since 1997 and has demonstrated considerable experience in TILA and Regulation Z issues.[44] Moreover, he has been appointed class counsel on a number of large and complicated TILA cases.[45]

### 10. The undesirability of the case.

There are very few attorneys who have the knowledge, ability and willingness to represent consumers in this area of law. Most attorneys are unwilling to take the risk of large investments of time for what appear at first blush to be minor, small dollar cases. No other attorneys in this Circuit regularly prosecute Consumer Credit Protection Act cases to conclusion as class actions. Searches on Westlaw and PACER will reveal that many – if not most – of the successful certifications of a class under TILA and the FDCPA in the Southern and Eastern

---

[42] *See* accompanying declaration of Brian L. Bromberg.
[43] *Id.*
[44] *See* accompanying declaration of Harley J. Schnall.
[45] *Id.*

Districts of New York over the past ten years have involved at least one of Plaintiff's attorneys as class counsel. Many other attorneys will file such cases as class actions, but few push them to certification. Accordingly, this factor, too, warrants an upward modification of the lodestar.

**11. The nature and length of the professional relationship with the client.**

Mr. Milo retained his attorney specifically to pursue the specialized consumer-protection laws at issue. Their employment was sought because of their legal abilities and reputations in this area of the law. Such representation is limited to consumer-protection claims, which are episodic, rather than ongoing, matters. Unlike their big-firm brethren, consumer attorneys cannot rely on hefty retainers from paying institutional clients or insurance companies over many years. Therefore, this *Johnson* factor warrants an upward modification of the lodestar.

**12. Awards in similar cases.**

There are few reported cases in New York discussing attorney fee awards in TILA class actions. Courts recognize that fee awards are to mimic the marketplace.[46] For these reasons, this case warrants an upward modification of the lodestar.

---

[46] *See, e.g., Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995) ("Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law."); *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997).

22

## VI.    Award to representative Plaintiff

Plaintiff requested, and Defendant has agreed, to a modest $3,500 award to the representative Plaintiff. Milo took time to meet with class counsel, assisted with the case, and kept himself apprised of case status and developments. Such awards are both reasonable and of the type commonly approved.[47] Neither fees nor representative award will deplete the settlement fund.

## VII.   Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the class settlement, the attorney's fees and the class representative fee.

Dated: New York, New York
            January 11, 2012

                                    PLAINTIFF,
                                    CHARLES MILO, Individually,
                                    and on behalf of the Class,

                                By:  /s/ Brian L. Bromberg
                                        Brian L. Bromberg
                                        One of Plaintiff's Attorneys

Attorneys for Plaintiff:
Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906

Harley J. Schnall
Law Office of Harley J. Schnall
711 West End Ave
New York NY 10025
(212) 678-6546

---

[47] *E.g., In re Marine Midland Motor Vehicle Leasing Litigation*, 155 F.R.D. 416 (W.D.N.Y. 1994).

## Certificate of Service

I, Brian Bromberg, an attorney, hereby certify that on January 11, 2012, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:


Jeff H. Galloway, Esq.


Dated: New York, New York
       January 11, 2012


                              /s/ Brian L. Bromberg
                                 Brian L. Bromberg

Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906

24